Simmons v. Stevens and Bradshaw just a minute all right mr. sales may it please the court and good morning I'm David sales for the appellants Daniel Hoffman in my office is here with me and mr. Lewis is seated in the front row right behind him he was trial counsel from the Searcy Denny firm in West Palm Beach I'd like to if I may your honors focus on two related errors of the district court with respect to its order granting partial summary judgment on the Monell claim against the sheriff the first of those errors is taking the position without citation to authority in the very particular circumstances of a case like this that the sheriff's custom of exonerating deputy sheriffs involved in a shooting before conducting any investigation could not support imposition of liability under Monell unless the plaintiff had established that there were prior unconstitutional shootings as a result of that same custom and then the second error is after this court disposed of the interlocutory appeal on deputy Lynn's contention that he was entitled to qualified immunity on summary judgment refusing to allow the plaintiff after the year-long delay that was necessitated by the interlocutory appeal to supply the court with the very type of information that the court had previously said was lacking now on the question the first question as to whether or not there was a custom I would like to point out to the court that the sheriff does not really take issue as to whether or not we provided sufficient record evidence of a custom of this particular sheriff coming to the scene either directly or occasionally through his principal surrogate in that regard miss Barbara and declaring the actions of a shooting by a deputy to have been just justified usually at the scene and there often and thereafter offer often frequently followed up immediately by press releases the same day press releases the same day interviews on television and as the court knows from the record as well sometimes in statements that appeared in the newspaper many of those statements in the newspaper they take issue with but I would really point out to the court that in the samples case it's cited at footnote 11 846 Southern second at 1333 this court actually took notice of a newspaper account on the issue of whether or not there could be notice the sheriff as I mentioned does not actually take issue as to whether or not this policy was in place and in fact the district court actually articulated it just as we we did in our in our moving papers and in our complaint and this is in our appendix 3 1 1 2 custom or policy of permitting excessive force can be established through newspaper hearsay like newspaper reports and media reports well we're not relying on that because as I mentioned a few moments ago your honor they take issue with that and the district court did as well as to whether or not those could be this is what's important what happens at the end of the day a shooting takes place right after it's all investigating and some disposition is made isn't that way what the key piece of evidence is well an important it is important in this case certainly and we know that any case it is important in any case correct I agree with that the question that we are suggesting that the district court overlooked is whether or not an existing custom of exonerating the deputy before an investigation can take place well the question the problem is whether or not at the end of the day the deputies know regardless of what the sheriff may say during the investigation or immediately there will be discipline right and on our position that's that's the question so your your argument has to be that the end of the day there's no discipline basically which sends the message that you could use things as a force I agree I agree with your honor to this extent certainly it was our position and our expert gave an affidavit saying so that when you routinely show up to the shooting and tell the deputy based on his or her account alone that their actions have been exonerated by the sheriff who sits atop at the disciplinary chain and to whom the record evidence in this case indicates internal affairs reports directly not only at the scene but thereafter that their actions have been vindicated before you could possibly conduct any reasonable investigation that's the message that was sent and the error of the district court your honor in other words the sheriff arrives at the scene as a matter of policy says you're exonerated which means that the investigation and the disciplinary proceeding will be window dressing that is our position your argument that is our position basically that that is our that is our position that that was the custom the district court took the position that which we did supply evidence of in our later submission after the interlocutory appeal the district court took the position that unless you show me that there have been prior unconstitutional shootings as a result of the custom then you cannot make that claim wasn't there an investigation regardless of what he said on the scene did an investigation take place and and did you did you question the results of those investigations absolutely and we took the position based on some of the authorities that are cited in our brief that that was corroborative actually of the very facts which were asserting that that is the custom of the department and that the investigation is in fact window dressing and to answer your question more directly as the court is probably aware I think it's 87 a in the docket there was a videotaped evidence of this particular encounter which directly challenged the version of the events that was told to the sheriff which was the basis of his public statement the basis of the same today press release which directly contradicts the evidence excuse me the statements that the sheriff relieved from deputy Lin and the people that were in the department that were responsible for investigating those matters confessed at the very first time the deputy Lin statements were actually not accurate when they were deposed in the civil lawsuits in this case up to that point in time they 100% took the view that he had expressed and stated that they had previously simply not seen the things in the videotape which if this court watches it can see them very clearly that the man from the time he is first encountered is being trailed by the deputy Lin to the time that he is shot four times without cause that is holding a cell phone in his hand the entire time and the account that was given by deputy Lin was simply false and whether he the jury found one of the unusual things about this particular circumstance is that we've had a trial with respect to the reasonableness of deputy Lin's perceptions thereafter and those perceptions were according to the jury at least not objectively reasonable I'd like to move very quickly to the second point because I do want to save some time knowing that there's a cross appeal the second point is it is if the district court was correct that you cannot win a case based on a theory that there is a custom of exonerating without without and doing an investigation that there has to been a has to have been a prior deprivation of constitutional rights in the form of a shooting that was unjustified and when we came back after this court affirmed the denial of summary judgment on qualified immunity different evidence relating to other incidents some of the incidents about which we have knowledge but certainly no no discovery no expert opinions have been developed in those cases and we supplied those to the district court and what I would suggest is actually a rule 60 motion asked the court to take note of that additional evidence and vacate the summary judgment order to supply the court with the evidence that the court had indicated was lacking the district court actually said that it wish it had had that evidence prior to the time that it had entered summary judgment previously but it accepted the sheriff's view that under what I would suggest was really a rule 59 argument relating to final judgments and of course there had been no final judgment that it could not consider evidence that was developed even though it had been developed the evidence had been developed after the summary judgment hearing because the events themselves had been developed had actually taken place prior to the time of the summary judgment hearing but but did they take place those developments after the shooting in this case from from memory I believe your honor that certainly at least one of them from memory took place prior to the shooting how can there be a custom that occurs after the event well I agree that under this court's decision in Salvato you cannot have an after occurring event that it proves causation but they would have been corroborative of the existence of the policy I think that the if I understand your honors question correctly at least one of those events as I recall had actually taken place prior to the Stephen shooting and therefore would have been not only corroborative of the policy corroborative of the reaction by the sheriff's office but also suggestive of the element of causation and finally on that in that regard before I do sit down and reserve the rest of my time we do take the position as well and the district court did not really seem to have addressed this that causation was established at least under this courts fairly liberal rules in terms of inferences that should be drawn in favor of the non-moving party and knowing that circumstantial evidence can support an inference of causation in this very setting that deputy Lynn had testified that he was aware of the sheriff's policy and in fact we know also from the record that a 31-year veteran of the sheriff's department took the position that this policy was also known what we're calling a policy or custom policy the custom of showing up and announcing how about the policy of window dressing I think we're talking about the same thing oh we're not we're talking the window dressing is poisons all of the investigations and the results it means they're all a sham because the sheriff who has the final word has already decided the matter at the scene that is our position I understand that and our position is also that it effectively is a policy of window dressing because how can people be expected in what is a military chain of command effectively when they report directly to the sheriff how can they be expected to reason we were entitled to this inference to reasonably contradict the man who has not only come to the scene and exonerated the actions of the deputy but issued a press release to that effect thank you your honor reserve your rebuttal time thank you Bronco morning your honors may it please the court summer Barranco here from Purdy jolly Jafrita and Bronco on behalf of the appellees sheriff and deputy Lynn as well as the cross appellant deputy Lynn I've been told by the clerk this morning that this is my one and only time to address the panel in regard to both appeal so I will do my best in that regard and I'm certain your honors will have no problem interrupting me if you have any questions in regard to the the initial appeal your honors it's obviously the appellees position that the trial court did not air in granting summary judgment to the sheriff on the Monell claim as I'm sure your honors are well aware of the Jill Brown case from the United States Supreme Court in 1997 and subsequent case law that makes it clear that a Monell claim against an agency such as the sheriff's office has very a very high standard of proof very rigorous requirements of both culpability and causation otherwise what happens is if the trial court doesn't require those high levels of of culpability and causation what happens is it collapses into responding at superior and frankly your honors from just a public policy standpoint it would be a scary world indeed if every time there was a shooting all the plaintiffs lawyers had to do was file media reports about an incident that suddenly there would be trials against agencies on every one of these shootings I don't think that's what the case law suggests your honors and I think the trial court properly got that in the order for summary judgment granting the Monell claim in favor of the sheriff's office in regard to the what happened here I know that in terms of there anything in anything in the record that would reflect any prior discipline or change in training after the previously settled 16 excessive force claims well your honor I guess the question would be specifically as to what type of training I know that was one issue regarding settlements and plaintiffs or appellants position is because there were settlements that that should be evidence that a jury could conclude there was a custom or policy but was there any change in training that's reflected in this record or any prior discipline at all and you're just to clarify your honor are you referring just to the cases that there were settlements in or at all at any time any well your honor Jackson versus Montesino that was mentioned that was a case where there was a shooting one of the Palm Beach Sheriff's deputies shot an individual in the head the gentleman survived that shooting and that was a situation where the deputies probationary status was was was extended but then ultimately that deputy was terminated by Sheriff Bradshaw that that's something that's in the record well all of these officers have Florida development Department of Law Enforcement Academy training yes your honor and that was in the record and what what is the how frequent is the update training locally well in you in regard to what's annual retraining certainly they get training when they're in the Academy and then once they are part of the force they they get at least annual training if not regular training you know regular depending on when the classes are conducted so a lot of the the training jackets will show you know consistent training throughout the year just depending on when the classes are actually offered but certainly at least an annual basis they're trained on use of force and other things that they're confronted with the training does change depending on things that are going on in out in society so it different classes are offered at different times but certainly as to the use of force it's at least on an annual basis just two quick questions and I'm sure you get to it did you object to the jury instruction at issue here at trial just to clarify your honor are you referring to the special interrogatory no no the jury instruction first the jury instruction to include that the judge ultimately gave which says whether a specific use of force is accessible and reasonable depends on factors if I'm not asking you about the subject was that objected to did you agree to that it was absolutely objected to what was referred in the brief that was filed on behalf of the sheriff and was that what happened during the trial court proceeding is trial counsel repeatedly objected to the instruction that was given in the charge conference you objected to this instruction at a charge conference after the charge conference before the the jury was read the instruction but then what happened your honor is you know as officers of the court we repeated our objection but then said obviously the court had decided it was going with this by court said it acknowledged the objection yes your honor what I want to know is why did the court not send the special interrogatory to the jury the qualified immunity issue why did he not I think I'm assuming it was requested oh it was absolutely I read that part of the record yes it was absolutely requested but your request which I have here was made an objectively reasonable mistake you really asked the jury to make a legal determination of whether the officer was entitled to qualified immunity isn't that something for the court to determine you didn't ask the jury to make any factual findings well your honor and I know you're from from a different circuit I know the 11th Circuit fairly recently came down with the opinion in the Montero case where a similar situation happened it would be our position and the 11th Circuit's opinion in that Montero case where a special interrogatory was given to a jury in a officer involved shooting case and the the jury concluded that the the shooting of that particular gentleman mr. Montero was excessive but in that case excessive force or a qualified immunity well in the Montero case with there was no mention of qualified immunity to the jury what what is it that you're asking the jury in this interrogatory do you find by the preponderance of the evidence that deputy Lynn made an objectively reasonable mistake we're asking the jury to make a decision in regard to up to the facts underlying the qualified immunity defense and if the trial court would have permitted us to do that as the trial court allowed us to do in the trial I'm sorry the jury would have been given the opportunity to then look at look at that special interrogatory if they were to answer in the affirmative then the trial court would have been given the opportunity to enter judgment as a matter of law in favor of the deputy on the defense of qualified immunity finding as a matter of law he would be entitled to that what facts where we're in dispute in in this particular case now you wanted the jury to make a determination on well the defense always your honor was in this case that deputy Lynn mistook a cell phone for a gun and so it was the defendant's position that it was a mistake on his part there was there was another instruction that was given that in according to the brief when an officer's mistaken belief that a citizen poses an immediate and deadly threat is subjectively reasonable under the circumstances then the officers use of deadly force is not excessive or unreasonable when that included another instruction well your honor that was if I'm understanding you correctly that was actually the jury instruction that the judge below in the trial court went with in lieu of this special interrogatory question never find out that's how they answered without a special interrogatory you can't determine from a general verdict whether the jury found the facts necessary to trigger qualified immunity the rest the Fifth Circuit is replete with cases in which instructions are given to the jury on the underlying factual issue that goes to qualified immunity yes your honor and that is our position I know that I think your honor might be referring to the published opinions of the Fifth Circuit yes has where the shooting in which the jury finds a constitutional violation but finds a fact which exonerates the if they were to find that the deputies mistake was a was an objectively reasonable one and that was frankly the the entire case for the defense for deputy Lynn and it's our position as set forth in in that appeal that by the trial court denying the special interrogatory question and changing the language of the jury instruction as judge Wilson referenced that that actually was an inaccurate statement of the loss such that deputy Lynn's ability to get qualified immunity was completely gone away with without a special interrogatory can't have qualified immunity anyway as I see it in these cases I would agree your honor because the instruction goes to the Fourth Amendment excessive force yes your honor and in terms of the instruction that was given to this jury they're being told essentially ladies and gentlemen shooting mr. Stevens who only had a cell phone could be found to be reasonable even without the the mistake part of it and it would be our position that it would it would be unconstitutional to shoot someone just because they have a cell phone but if the deputies perception was that the cell phone was a gun and that was an objectively reasonable belief then not withstanding the constitutional violation the deputy would be entitled to qualified immunity would wouldn't that be if those were the facts then the jury wouldn't find excessive force because under the circumstances the force that was used would have been reasonable well your honor I know there's some case law from the 11th circuit that that frankly is a little confusing when you read when you read it talking about if there was a mistake a reasonable mistake then it's not a violation of the Constitution such as the quills case and I frankly I am having difficulty fitting those together but but I it seems to me when you just kind of merge it all together as was done here you're denying the deputy the ability to find out per the instruction of Cotrell versus Caldwell you know this is that the the essence of his defense and to not permit that issue the factual issue anyway to go to a jury it is essentially denying the deputy that you and maybe I'm having the same trouble that that you're having is if if the facts are as you as you stated then there would be no excessive force if the facts are that there was excessive force how would you frame the question that even though the force was excessive ie was not reasonable the deputy would have been entitled to qualified immunity well well it's difficult your honor as the courts have said you're not this particular court the 11th Circuit has said you're not supposed to mention qualified immunity in a jury instruction so you can't do that so what we were well he said more than that he said he's up to the court to determine whether or not this entitlement to qualified immunity or the jury would decide the facts the any in in in question and in this case it was our position that the dispute in the fact per what the trial court judge said is whether or not deputy Lynn's mistaken belief that it was a gun whether that was reasonable or not or objectively reason also the point of the matter is whether it was mistaken or not a fourth amendment violation occurred but that doesn't answer the question of qualified immunity correct wrong and point that out graphically with the instructions to the jury more so than our court head yes your honor and in our court has done that qualified immunity the point of the matter is qualified immunity does not die when the trial commences absolutely your honor cannot be determined absolutely such without a special interrogatory such as in the Montero versus Nand law case that your honor's just recently determined similar scenario as this case in terms of an officer involved shooting but but that trial court judge permitted a special interrogatory question and that jury actually well if the judge didn't permit the interrogatory to be used you couldn't decide qualified immunity correct your honor there's no there's no way there's no way for that to happen I don't know if your honors want to hear further on the Monell appeal I know we set forth our position at length in the briefs as judge were Brenner said a moment ago when the other side was up here certainly things that happened after Don Charles Stevens was shot on September 13th of 2013 could not have caused the shooting and that's a basic premise in this case and frankly why much of what the plaintiff below put forth on the record does not pass muster and sustain a claim to a jury the I think as was discussed earlier the theory is that the sheriff in a sense absolved these shootings at the outset and what happened later was a sham or fraud is was there is there in the record some development of what happened after the sheriff so-called absolved the shooter and the investigations were carried out well in the record your honor there's reference to the state attorney's memorandums where investigations were conducted aside from what the sheriff may or may have not have said on the scene and there did any investigations result in a in a finding contrary to what the sheriff said on the scene not ultimately your honor no I mean you're saying what the sheriff said on the scene just so we're clear he would be saying things based on what he was advised at the time and there weren't any state attorney's office investigations that came up with it was an unjustified shooting or criminal charges were brought in any of those shootings so they they confirm what the yes in essence as well as there being evidence in the record that not only did the state attorney's office do its own investigation so did the sheriff's office so it looks like I'm out of time unless your honors have any further questions stand on the briefs thank you very much Judge Robrano just to respond first to the issue that you just raised the yes the Adams case which is one of those matters that we tried to bring to the court's attention after we came back from the interlocutory appeal this court subsequently affirmed a denial of a motion for summary judgment on qualified immunity and that was one of the matters that we sought to bring the attention of the district court after the district court made it clear that it wanted some evidence of a lack of justification and I would just say and we discussed this it's our position that something that the state attorney does in this case for example four months after the the events not necessarily based on the same circumstances that we are saying is the is the identity of the of the sheriff's custom that that that is not proof as to whether or not there is a custom number one and that is not proof number two as to whether or not it was causally related to the shooting I do want to take a few minutes before I go back to the Manila issue if I have time to talk about this issue of the jury instruction because I think it's important for the court to remember that even if the court concludes and we disagree with this we disagree do agree with the district court on this but even if the court concludes that the defendant was entitled to a separate jury question on the issue of qualified immunity as in special interrogatory a special interrogatory on the question of qualified immunity that's because it is an instruction without the special interrogatory is meaningless well I'm going to respectfully disagree with your honor I'm sorry I'll tell you why it's meaningless okay it's because the factual underpinning of the qualified immunity defense is not relevant to the Fourth Amendment excessive force claim if there has been an excessive force violation it doesn't matter whether or not the officers entitled to qualified immunity if the plaintiff still prevails because it was an excessive force claim but the factual underpinnings of qualified immunity don't have anything to do with whether there was a constitutional violation all right if I may your honor in this particular case familiar with the raft of Fifth Circuit cases I take it I am familiar generally with your honors reference to the Fifth Circuit issue of a special interrogatory about the need to send it to the jury right and I do want to address that but I would like to just also if I may because there is a point that we make in our brief and it was a point I believe that was taken up by the district court because it was the obligation if your honor if your honor if that is the rule of this court if that's going to be the rule that a special interrogatory verdict was required it was required to be proposed by the defense and it was required to be proposed in a form that was legally correct and one of the reasons that it was a rejected based on the arguments of my co-counsel in the district court was the question that they asked for was this that deputy lens what whether deputy lens made an objectively reasonable mistake when he perceived that Don trawl Stevens threatened Adams Lynn with a firearm and so forth one of the things that concern the district court was that that assumed the question that they asked for on qualified immunity assumed a version of the facts in the case that was hotly disputed by the parties well that's that's why you said a special interrogatory to the jury right but your honor that the special interrogatory in this case was proposed by the defense and the one that was proposed included an ingredient that resolved a factual issue against us and that was one of the reasons it was objected to if I could move quickly to respond to some of the questions that were raised and I would just urge your honor in considering this issue as to whether or not a special interrogatory was required to consider and it's a page 30 of our brief the additional language that was included by the district court to see if it does in fact as the district well my position is if without the special interrogatory if that if that was not required then their requested instruction was no good all right your honor I understand me yes yes I do your their their requested instruction ties into a special interrogatory not not to the Fourth Amendment claim I understand the courts I understand the courts position on that I just to respond if I can I might take a second over to Judge Wilson's your question with respect if there had ever been disciplined before if you take a look it's at page 23 and page 24 of our briefs people involved in this investigation a corporal a captain and a detective a combined 72 years of law enforcement experience with this department testified and I don't remember which of them that it was that there had been no change in Sheriff's Office policies practices or training or anything that was learned during the investigation of an officer involved shooting council asked the court to take note of the Montesino case please take a look if you would please at footnote 1 at page 4 of our reply brief because it is clear from that point forward that that actually was not in the record it was not something that the district court could have mentioned and then I would like to quote Brown with respect to the Monell claim since it was referenced by counsel a plaintiff must this is Supreme Court 520 us at 412 a plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular Constitution or statutory right will follow the decision the decision in this case being the custom we submit that that was a jury question and your honor the court your honors the court should reverse the relief that we request is expressly stated in the brief thank you we have your case court will be in recess under the usual order